UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ESCONDIDO,<br><br>         Plaintiff,<br><br>v.<br><br>GENERAL REINSURANCE CORPORATION and GENESIS MANAGEMENT AND INSURANCE SERVICES CORPORATION,<br><br>         Defendants. | Case No.: 19cv868-MMA (BGS)<br><br>**ORDER GRANTING GENESIS MANAGEMENT AND INSURANCE SERVICES CORPORATION'S MOTION TO DISMISS**<br><br>[Doc. No. 10] |
| GENERAL REINSURANCE CORPORATION,<br><br>         Counter Claimant,<br><br>v.<br><br>CITY OF ESCONDIDO,<br><br>         Counter Defendant. | |

On April 4, 2019, Plaintiff City of Escondido ("Plaintiff") filed a Complaint for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief in San Diego County Superior Court against Defendants General Reinsurance Corporation ("GRC") and Genesis Management and Insurance Services

1

Corporation ("Genesis"). Doc. No. 1-2. Defendants removed the action to this Court on May 9, 2019. Doc. No. 1. On May 23, 2019, Plaintiff filed the operative First Amended Complaint ("FAC"). Doc. No. 8 ("FAC"). Genesis now moves to dismiss the causes of action against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 10-1 ("MTD"). Plaintiff opposes dismissal [Doc. No. 13 ("Oppo.")] and Genesis replied [Doc. No. 14 ("Reply")]. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 4. For the following reasons, the Court **GRANTS** Genesis' motion to dismiss.

## BACKGROUND[1]

GRC is an insurance company and Genesis is a wholly owned subsidiary of GRC. FAC ¶¶ 1-2. From February 1, 1990 to May 15, 1994, Defendants insured Plaintiff for workers' compensation payments to Plaintiff's covered employees and allocated investigation, adjustment, and legal expenses. FAC ¶ 8. Plaintiff alleges that the insurance policy was issued by GRC, but that it was directed by Defendants "solely to Genesis with respect to claims, questions and reimbursement requests involving the policy," and "was directed by [D]efendants to submit all its claims status reports solely to Genesis representatives . . . ." FAC ¶ 2. According to Plaintiff, it only communicated with Genesis, who was the "sole decision maker and entirely controlled whether or not reimbursements were to be issued to [P]laintiff under the policy." *Id.* "Over the course of more than 15 years in dealing with [P]laintiff concerning the policy, GRC and Genesis acted as a unitary entity with Genesis conducting all the communications with [P]laintiff concerning the policy" such that "Genesis is the alter ego of GRC." *Id.*

Plaintiff alleges that the policy requires Defendants to indemnify Plaintiff when its expenditures on a worker's compensation claim falling within the policy period exceed

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

the policy's $250,000 self-insured retention. FAC ¶ 8. During the policy period, Plaintiff paid or incurred liability to pay workers' compensation claims plus allocated investigation, adjustment, and legal expenses in excess of $250,000 on three claims: (1) GRC claim number 6040678 for claimant Paula Westenberger (the "Westenberger Claim"); (2) GRC claim number 6037896 for claimant Aida Faeldan (the "Faeldan Claim"); and (3) GRC claim number 6034852 for claimant Michael Gain (the "Gain Claim") (collectively, the "Three Underlying Claims"). FAC ¶ 10.

Plaintiff timely submitted requests for indemnity to Defendants for amounts in excess of $250,000 for each of the Three Underlying Claims. FAC ¶ 11. Each time, Plaintiff alleges Defendants refused "to pay Plaintiff and . . . adopted a pattern and practice of wrongful and bad faith claims evaluations, during which [D]efendants have withheld benefits under the pretext of continuing to investigate while they assert a variety of challenges and excuses . . . ." *Id.* Additionally, Defendants "have refused to reasonably and timely investigate, refused to provide legitimate, reasonable or accurate reasons for their refusal to provide benefits owed, and have unreasonably withheld benefits owed to Plaintiff." FAC ¶ 12. With respect to the Westenberger Claim, Plaintiff alleges Defendants falsely represented that they would reimburse Plaintiff for future medical payments made pursuant to a settlement agreement. FAC ¶¶ 60-77. However, Defendants intended not to fully reimburse Plaintiff and intended to delay or avoid making reimbursement payments. *Id.* Accordingly, Plaintiff asserts causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief with respect to each of the Three Underlying Claims. Additionally, Plaintiff asserts causes of action for concealment and negligent misrepresentation against Defendants with respect to the Westenberger Claim.

**A.      The Westenberger Claim**

Mrs. Westenberger injured her low back on July 30, 1993, while working as an employee of Plaintiff. FAC ¶ 17. She became temporarily totally disabled due to increased pain. *Id.* When conservative treatment proved ineffective, Mrs. Westenberger

underwent several failed back surgeries. FAC ¶¶ 16-17. In December 1995, Mrs. Westenberger began working at the City Heights Town Council ("CHTC"). FAC ¶ 19. When her pain increased, she was referred to a pain management specialist, which included a series of back injections to alleviate back pain. *Id.* She also received a right hip injection, which caused complications necessitating a right hip replacement. FAC ¶ 16. As a result, Mrs. Westenberger developed a left foot deformity requiring multiple surgeries. *Id.* "These surgeries were complicated by the development of reflex sympathetic dystrophy ("RSD")." FAC ¶ 22. She was diagnosed with left foot neurologic problems and complex regional pain syndrome ("CRPS"). FAC ¶ 16. Mrs. Westenberger's worker's compensation case determined that her right hip replacement, left foot deformity, left foot neurological problems, and CRPS were all causally related to her industrial injury suffered while working for Plaintiff. *Id.* Thus, Plaintiff was responsible for paying for Mrs. Westenberger's treatment for these conditions. *Id.*

During the worker's compensation proceeding, Plaintiff sought a right of contribution against CHTC and its insurer for costs associated with Mrs. Westenberger's right hip problems and right hip replacement. FAC ¶ 34. Ultimately, 50% of Mrs. Westenberger's right hip problems were apportioned to the 1993 back injury and 50% were apportioned to her full-time work at CHTC. FAC ¶ 35. However, CHTC "is a non-profit community advocacy group with no assets and it had no worker's compensation insurance" during the time Mrs. Westenberger was working full-time. FAC ¶ 37. Thus, Plaintiff, with Defendants' concurrence, abandoned the contribution claim. *Id.* As a result, Defendants purportedly knew that Plaintiff faced "near certain joint and several liability" for the costs of Mrs. Westenberger's past and future treatment that would likely exceed $1 million. FAC ¶ 31.

In 2011, Defendants' authorized Plaintiff to offer a structured settlement of $1.25 million to Mrs. Westenberger. *Id.* The "Compromise and Release" would release Plaintiff from further disability payments and any obligation to pay for Mrs. Westenberger's future medical care. *Id.* Genesis advised Plaintiff that it would initially

fund all components of the settlement, but that Genesis would reimburse Plaintiff for each settlement payment. FAC ¶ 74. Mrs. Westenberger rejected the offer because she believed her future medical care would exceed the settlement amount. FAC ¶ 31.

In May of 2012, Plaintiff and Mrs. Westenberger entered into a "Stipulation with Request for Award." FAC ¶ 25. Defendants "authorized and approved of [Plaintiff's] entering into [the] "Stipulation with Request for Award" which stated [Plaintiff] was liable for all future medical care for [Mrs. Westenberger's] 'low back, hips, left foot, psyche, and RSD . . . ." *Id.* Genesis's authorization of the settlement allegedly acknowledged that Plaintiff's payments for future medical care would be fully reimbursable pursuant to the policy. FAC ¶ 62. Plaintiff alleges that Genesis's authorization of the "Stipulation and Request for Award" was a "ruse intended to defraud and damage" Plaintiff. FAC ¶ 64. Genesis purportedly concealed its true intentions to induce Plaintiff to enter into the settlement so that Defendants could benefit from the reduced permanent disability and life pension exposure while knowing it would not fully reimburse Plaintiff. *Id.* Genesis' intent was to "stall, delay and concoct false reasons to avoid reimbursing [P]laintiff for these future medical care payments." *Id.* Defendants have reimbursed Plaintiff over $1.2 million on the Westenberger claim. FAC ¶ 32. "However, in 2018, Defendants began raising numerous objections to [Plaintiff's] additional reimbursement requests." *Id.* Plaintiff alleges that these objections are "meritless and are based upon false and intentionally inaccurate grounds as well as knowing misrepresentations of California law and the terms of the Policy." FAC ¶¶ 32-45, 68-69 (listing examples of Defendants' objections).

**B.      The Faeldan Claim**

On September 1, 1993, Ms. Faeldan "experienced right arm and elbow pain in connection with pushing a steel cabinet file and lifting boxes of police files" while working as a data entry operator for Plaintiff's Police Department. FAC ¶ 46. Conservative treatment minimally improved her pain and Ms. Faeldan returned to work with limited use of her right arm. *Id.* She then developed pain in her left arm and elbow

from overuse. *Id.* Ms. Faeldan eventually had surgery on her left elbow, was diagnosed with bilateral carpal tunnel syndrome, and myofascial pain syndrome. *Id.* She received psychiatric treatment in connection with her injuries and inability to work. *Id.*

In June of 2008, Defendants issued Plaintiff a check for $8,132.18 to reimburse Plaintiff for the amounts expended by Plaintiff in excess of the policy's retention on the Faeldan claim. FAC ¶ 47. Years later, Plaintiff began making monthly life pension payments to Ms. Faeldan pursuant to an earlier stipulation and award. *Id.* These payments were in excess of the policy's retention on the Faeldan claim. *Id.* Plaintiff made numerous reimbursement requests to Defendants for these life pension payments to no avail. FAC ¶ 49.

## C. The Gain Glaim

On May 16, 1993, Mr. Gain was working as a fire investigator for Plaintiff when he fell through the second story of a fire damaged building, suffering significant injuries to his neck, low back, right shoulder, and right knee. FAC ¶ 51. As of 2008, Defendants had reimbursed Plaintiff approximately $133,000, but determined that they overpaid Plaintiff by $58,000. *Id.* Plaintiff issued a check to Defendants in 2009 for $58,481.75. *Id.* After 2009, Plaintiff has paid over $17,000 in life pension payments to Mr. Gain. FAC ¶ 52. For several years, Plaintiff has submitted proper reimbursement requests for these life pension payments but has not received any reimbursement from Defendants. FAC ¶ 53. Most of these requests have been ignored, "except for once when Defendants incorrectly asserted the retention had not been exceeded." *Id.* Defendants ignored Plaintiff's response with documentation showing the exceeded retention. *Id.* In August 2017, Defendants asked for more information regarding a reimbursement request. *Id.* After receiving the information, Defendants did not reimburse Plaintiff. *Id.* Since then, all of Plaintiff's requests and e-mails to Defendants have been ignored. *Id.*

### LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

Genesis moves to dismiss all claims against it on two grounds: (1) the claims based on contract must be dismissed because Genesis is not a party to the insurance contract; and (2) Genesis cannot be liable for the claims sounding in fraud because it acted within the scope of its agency with GRC. MTD at 5.

### A. Claims Based on Contract

Genesis avers that Plaintiff's first, second, and fifth causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief must be dismissed because there is no contractual relationship between Plaintiff and

Genesis. *Id.* at 10. Plaintiff maintains that Genesis is liable as the alter ego of GRC.[2] Oppo. at 8-11. Alternatively, Plaintiff contends that Genesis is liable as a member of a joint venture with GRC. *Id.* at 11-12. In response, Genesis argues Plaintiff's alter ego and joint venture allegations are conclusory. Reply at 1-3.

Under California law, a defendant must have been a consenting party to the contract at issue to be liable for breach of contract and breach of the implied covenant of good faith and fair dealing. *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973) (holding that the non-insurer defendants were not parties to the insurance contract and cannot be liable for breach of the implied covenant of good faith and fair dealing); *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999) (holding that "an insurance agent cannot be held liable for breach of contract or breach of the implied covenant of good faith and fair dealing because he is not a party to the insurance contract"). Here, Plaintiff alleges that the insurance policy "was issued by GRC." FAC ¶ 2. The insurance policy itself, which Plaintiff attached to its FAC as exhibit 1, lists GRC as the insurer. Doc. No. 8-1 ("Policy"). Genesis is not named in the policy. *See id.* Based on the face of the insurance policy, Genesis was not a party to the contract. Thus, Genesis cannot be held liable for breach of contract, breach of the implied covenant of good faith and fair dealing, or declaratory relief based on contract under the general rule.

However, the alter ego doctrine permits courts to disregard the distinction between a corporation and its owner and to extend liability to the owner for the acts of the corporation. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (Ct. App. 2000). To establish a party as the alter ego of a corporation, two requirements must be met: (1) "there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist[;]" and (2) "there must be an inequitable result if the

---

[2] The Court **DENIES** Plaintiff's request to judicially notice GRC's answer and counterclaim as it did not rely on these documents in ruling on the instant motion to dismiss.

8

acts in question are treated as those of the corporation alone." *Id.*; *see also United States v. Boyce*, 38 F. Supp. 3d 1135, 1154-55 (C.D. Cal. 2014) (quoting *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010)). Conclusory allegations of alter ego status are insufficient to state a claim. *See Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983). In assessing unity of interest, courts consider several factors, including "inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (Ct. App. 2002) (citations omitted). "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *Virtualmagic Asia, Inc.*, 99 Cal. App. 4th at 245.

Here, Plaintiff has alleged that there is "a unity of interest and ownership between GRC and Genesis." FAC ¶ 3. Specifically, Plaintiff alleges that "GRC and Genesis share a mutual interest in administering requests for reimbursement under the policy and Genesis has the ability to independently exercise broad discretionary authority concerning providing policy benefits." *Id.* In addition, Plaintiff maintains that it communicates solely with Genesis "with respect to claims, questions and reimbursement requests" through a Genesis website, Genesis e-mail address, or a Genesis mailing address. FAC ¶ 2. Plaintiff specifies that "Genesis was the sole decision maker and entirely controlled whether or not reimbursements were to be issued under the policy." *Id.* Thus, Plaintiff's allegations focus on GRC's use of Genesis as a conduit for some of its affairs. *See* Oppo. at 9 ("The facts here show that GRC uses Genesis as a mere instrumentality to engage in *all* conduct *with the City*." (emphasis added)). This alone cannot support a finding that Genesis and GRC share a unity of interest and ownership. Plaintiff failed to allege any other factors indicative of a unity of ownership and interest,

such as commingling of assets, treatment of the assets of one corporation as the other's own assets, failure to maintain corporate records, employment of the same employees and attorneys, undercapitalization, or use of the corporation as a shell. In any event, Plaintiff simply recites the second element of alter ego liability without providing any factual support. *See* FAC ¶ 3 ("Adhering to the fiction of the separate existence of Genesis as an entity distinct from GRC would permit an abuse of the corporate privilege and would sanction fraud and promote injustice. This is because GRC seeks to maintain the fiction of the corporate separateness to insulate itself and avoid liability for the wrongful conduct of Genesis and thereby deprive plaintiff of its ability to recover damages against GRC."). Therefore, Plaintiff has failed to allege specific facts indicating that fraud or injustice would result in this case if the Court does not find that Genesis is liable under an alter ego theory of liability.

Plaintiff also alleges that Genesis is a joint venture of GRC. Courts apply the joint venture doctrine to hold each joint venture liable in tort and contract when three elements are met: (1) "the members must have joint control over the venture (even though they may delegate it)[;] (2) the members "must share the profits of the undertaking[;]" and (3) "the members must each have an ownership interest in the enterprise." *Jeld-Wen, Inc. v. Superior Court*, 131 Cal. App. 4th 853, 872 (Ct. App. 2005). Here, Plaintiff alleges that GRC and Genesis "share a mutual interest in administering requests for reimbursement under the Policy," have a "unity of interest and ownership," and that Genesis "controlled whether or not reimbursements were to be issued to plaintiff under the policy." FAC ¶¶ 2-3. Plaintiff has failed to allege facts showing that Defendants have expressly or implicitly entered into a joint venture with one another. The FAC contains no allegations that Defendants share profits or losses or that they exercise equal authority and control over the conduct of each other.

Based on the foregoing, the Court finds that Plaintiff has not adequately pled facts to find Genesis liable under either an alter ego theory of liability or a joint venture theory. Thus, Plaintiff has failed to sufficiently allege that Genesis could be held liable for breach

of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief based on contract.

**B.    Claims Sounding in Fraud**

Genesis argues the remaining causes of action for negligent misrepresentation and concealment must be dismissed because it was acting within the scope of its agency with GRC and, in any event, Plaintiff's allegations are insufficient to withstand a motion to dismiss. MTD at 12-18. Plaintiff maintains that it adequately pleads both causes of action and that Genesis can be individually liable for its own torts. Oppo. at 12-19.

**1.    Agency**

As an initial matter, "[a]n agent or employee is always liable for his or her own torts, whether the principal is liable or not, and in spite of the fact that the agent acts in accordance with the principal's directions. Similarly, an agent who commits an independent tort, such as fraud, remains liable despite the fact that the principal, by ratification, also becomes liable." *Bock v. Hansen*, 225 Cal. App. 4th 215, 230 (Ct. App. 2014) (citation and internal quotation marks omitted). Further, an insurer's agent or employee may be held personally liable for torts committed in the course of handling a third party claim, "e.g., *misrepresentation or deceit*, invasion of privacy, intentional infliction of emotional distress, etc." *Id.* at 228. Here, Plaintiff alleges that Genesis was the agent of GRC and was acting within the course and scope of its employment "in doing the things . . . alleged." FAC ¶ 5. Genesis does not dispute this allegation. *See* MTD. As a result, Genesis may be liable for its own torts, such as negligent misrepresentation and concealment, despite the fact that it was acting within the scope of its agency with GRC.

**2.    Negligent Misrepresentation**

Under California law, the elements of negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to

11

whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (Ct. App. 1986).

Genesis contends it may not be liable for negligent misrepresentation because it owed no duty to Plaintiff. MTD at13-15. In support, Genesis cites *Sanchez v. Lindsey Morden Claims Serv.s, Inc.*, 72 Cal. App. 4th 249, 253 (Ct. App. 1999) for the proposition that insurers' agents owe no duty of care to third parties for negligence. MTD at 13-15. Plaintiff counters that a later California opinion distinguished negligence from negligent misrepresentation in the context of torts committed by insurance agents. Oppo. at 13. In *Bock v. Hansen*, the court noted that an insurance agent owes a duty to communicate accurate information to a third party in two situations: (1) "where providing false information poses a risk of and results in physical harm to person or property[;]" and (2) "where information is conveyed in a commercial setting for a business purpose."[3] *See Bock*, 225 Cal. App. 4th at 229 (internal quotation marks and citation omitted). "[T]he 'ordinary rule' is that liability for negligent misrepresentation is imposed only on those who supply information for 'business purposes in the course of a business or profession.'" *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 481 (Ct. App. 2003) (quoting *Garcia v. Superior Court*, 50 Cal. 3d 728, 735 (1990)). This rule is based on the premise that "'a plaintiff cannot expect the defendant to exercise the same degree of care [in social meetings] as he would when acting in a business or professional capacity.'" *Id.* at 482 (quoting *Garcia*, 50 Cal. 3d at 735).

Plaintiff's allegations satisfy this rule. Plaintiff alleges that Genesis represented it would reimburse it for payments made pursuant to the Westenberger settlement. However, Genesis focuses on specific language from Section 552 of the Restatement (Second) of Torts. Reply at 4. Section 552(1) provides:

---

[3] Genesis attempts to lessen the impact of the "business purpose" exception as *dicta*. Reply at 4 n.1. However, *Bock* clearly stated that "the setting here involves *both*" situations providing for a duty to communicate accurate information. *Bock*, 225 Cal. App. 4th at 229.

> One who, in the course of his business, profession or employment, or *in any other transaction in which he has a pecuniary interest*, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (emphasis added). Genesis argues it "did not have a pecuniary interest in any representation to [Plaintiff] as it was not hired by [Plaintiff] to provide advice and in fact, had no contractual relationship with [Plaintiff] at all." Reply at 4 n.1. However, this misconstrues § 552(1). Section 552(1) does not require that Genesis have a pecuniary interest in advising Plaintiff if Genesis, "in the course of his business, profession or employment, . . . supplie[d] false information for the guidance of others in their business transactions." Restatement (Second) of Torts § 552(1). Plaintiff alleges that Genesis supplied the information regarding reimbursements for payments made pursuant to the Westenberger settlement in the course of its business or profession and that Plaintiff sought the information to guide it in its business transactions—*i.e.*, whether to enter the settlement agreement or not. Genesis does not dispute this. *See* Reply at 4. Thus, the Court finds that Plaintiff has sufficiently alleged that Genesis owed a duty to communicate accurate information.

Genesis also argues Plaintiff has not alleged any facts establishing a misrepresentation, or breach of its duty to communicate accurate information. MTD at 15. Specifically, Genesis avers that its reimbursement representation in 2011 was unrelated to the 2012 settlement. *Id.* According to Plaintiff, in May of 2011, Genesis authorized a settlement offer to the Westenberger Claim wherein Genesis would reimburse Plaintiff for payments made pursuant to that settlement. FAC ¶¶ 74-75. While that settlement offer was rejected, Plaintiff appears to argue that Genesis' 2011 representation "that it would reimburse [P]laintiff for payments made pursuant to a settlement reached with Mrs. Westenberger" also applied to the 2012 settlement. FAC ¶¶ 75-76; *see* Oppo. at 15. As such, when Genesis subsequently authorized a different

settlement in May 2012, Plaintiff contends it justifiably relied on Genesis' 2011 representation that it would reimburse Plaintiff for payments made pursuant to the 2012 settlement. FAC ¶¶ 75-76. These allegations do not make clear whether Genesis represented to Plaintiff that it would reimburse Plaintiff for payments made pursuant to *any* settlement offer authorized by Genesis or only for payments made pursuant to the 2011 settlement offer. *See* FAC ¶¶ 74-77. As a result, Plaintiff has not sufficiently alleged that Genesis made a misrepresentation.

### 3. Concealment

"'The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.'" *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (Ct. App. 2015) (quoting *Graham v. Bank of America, N.A.* 226 Cal. App. 4th 594, 606 (Ct. App. 2014)). Fraud by concealment remains subject to Rule 9(b) and must be pleaded with specificity rather than with general and conclusory allegations.

Plaintiff alleges Genesis concealed its intent to not "fully reimburse plaintiff for the future medical care payments" made pursuant to the 2012 settlement with Mrs. Westenberger and that it intended to "stall, delay and concoct false reasons to avoid reimbursing [P]laintiff for these future medical care payments." FAC ¶ 64. Genesis argues, in part, that the FAC alleges no facts imposing a duty to disclose material facts to Plaintiff. MTD at 17-18. "To maintain a cause of action for fraud through nondisclosure or concealment of facts, there must be allegations demonstrating that the defendant was under a legal duty to disclose those facts." *Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 931 (Ct. App. 2015). Here, Plaintiff's claim for fraudulent concealment is deficient. Plaintiff alleges that Genesis authorized a settlement

14

with Mrs. Westenberger when Genesis harbored a secret intent not to fully reimburse Plaintiff and to stall or avoid reimbursing Plaintiff. *See* FAC ¶ 64. The FAC does not set forth any particularized facts to establish whether Genesis had a duty to disclose its "intent" or any other material facts to Plaintiff.[4] As a result, the FAC fails to plead fraud by concealment with the specificity required by Rule 9(b).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Genesis's motion to dismiss. Although Plaintiff has failed to adequately plead its claims against Genesis, it is not clear that it would be unable to do so if given leave to amend. Accordingly, dismissal is without prejudice and with leave to amend. *See Knappenberger*, 566 F.3d at 942. Plaintiff must file an amended complaint, if any, on or before **September 3, 2019**.

**IT IS SO ORDERED**.

Dated: August 20, 2019

Hon. Michael M. Anello
United States District Judge

---

[4] Plaintiff contends that *Bock* establishes that an insurance agent owes a duty to disclose material facts to a third party. Oppo. at 17. However, the Court is not convinced that *Bock* holds that an insurance agent owes a duty to disclose its intent. *See Bock*, 225 Cal. App. 4th at 228-31. *Bock* discusses only an insurance agent's duty with respect to negligent misrepresentation. *Id.*