UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ESCONDIDO,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL REINSURANCE CORPORATION and GENESIS MANAGEMENT AND INSURANCE SERVICES CORPORATION,<br><br>Defendants. | Case No. 19cv868-MMA (BGS)<br><br>**ORDER GRANTING GENESIS MANAGEMENT AND INSURANCE SERVICES CORPORATION'S MOTION TO DISMISS**<br><br>[Doc. No. 18] |
| GENERAL REINSURANCE CORPORATION,<br><br>Counter Claimant,<br><br>v.<br><br>CITY OF ESCONDIDO,<br><br>Counter Defendant. | |

On April 4, 2019, Plaintiff City of Escondido ("Plaintiff" or "City") filed a Complaint for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief in San Diego County Superior Court against Defendants

General Reinsurance Corporation ("GRC") and Genesis Management and Insurance Services Corporation ("Genesis"). Doc. No. 1-2.[1] Defendants removed the action to this Court on May 9, 2019. Doc. No. 1.

On May 23, 2019, Plaintiff filed the First Amended Complaint ("FAC"), adding causes of action for concealment and negligent misrepresentation. Doc. No. 8 ("FAC"). Genesis then moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 10-1. On August 29, 2019, the Court granted Genesis's motion to dismiss without prejudice and with leave to amend. Doc. No. 16 at 15.

On September 3, 2019, Plaintiff filed the operative Second Amended Complaint ("SAC") asserting causes of action for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) concealment; (4) negligent misrepresentation; (5) false promise; and (6) declaratory relief. Doc. No. 17 ("SAC"). Genesis now moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 18. For the following reasons, the Court **GRANTS** Genesis's motion.

# I. BACKGROUND[2]

GRC is an insurance company and Genesis is a wholly owned subsidiary of GRC. SAC ¶¶ 1–2. From February 1, 1990 to May 15, 1994, Defendants insured Plaintiff "for workers' compensation payments to Plaintiff's covered employees and allocated investigation, adjustment[,] and legal expenses . . . ." *Id.* ¶ 8. Plaintiff alleges that the insurance policy was issued by GRC, but that it "was directed by [D]efendants solely to Genesis with respect to claims, questions[,] and reimbursement requests involving the policy," and "was directed by [D]efendants to submit all its claims status reports solely to

---

[1] All citations refer to the pagination assigned by the CM/ECF system.

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976). Additionally, given the parallels between the FAC and the SAC, the Court repeats the background section provided in the Court's previous dismissal order where appropriate. *See* Doc. No. 16 at 2–6.

Genesis representatives . . . ." *Id.* ¶ 2. According to Plaintiff, it only communicated with Genesis, who was the "sole decision maker and entirely controlled whether or not reimbursements were to be issued to [Plaintiff] under the policy." *Id.* "Over the course of more than 15 years in dealing with [Plaintiff] concerning the policy, GRC and Genesis acted jointly through Genesis, with Genesis conducting all the communications with [Plaintiff] concerning the policy" such that "Genesis is the alter ego of GRC." *Id.* ¶ 2, 3.

Plaintiff alleges that the policy requires Defendants to indemnify Plaintiff when its expenditures on a worker's compensation claim falling within the policy period exceed the policy's $250,000 self-insured retention. *Id.* ¶ 8. During the policy period, Plaintiff "paid or incurred liability to pay workers' compensation claims plus allocated investigation, adjustment[,] and legal expenses in excess of $250,000" on three claims: (1) GRC claim number 6040678 for claimant Paula Westenberger ("Westenberger Claim"); (2) GRC claim number 6037896 for claimant Aida Faeldan ("Faeldan Claim"); and (3) GRC claim number 6034852 for claimant Michael Gain ("Gain Claim") (collectively, the "Three Underlying Claims"). *Id.* ¶ 10.

Plaintiff timely submitted requests for indemnity to Defendants for amounts in excess of $250,000 for each of the Three Underlying Claims. *Id.* ¶ 11. Each time, Plaintiff alleges Defendants "refused to pay [Plaintiff] and . . . adopted a pattern and practice of wrongful and bad faith claims evaluations, during which [D]efendants have withheld benefits under the pretext of continuing to investigate while they assert a variety of challenges and excuses . . . ." *Id.* Additionally, "[D]efendants have refused to reasonably and timely investigate, refused to provide legitimate, reasonable[,] or accurate reasons for their refusal to provide benefits owed, and have unreasonably withheld benefits owed to Plaintiff." *Id.* ¶ 12.

**A. The Westenberger Claim**

Mrs. Westernberger injured her low back on July 30, 1993, while working as an employee of Plaintiff. *Id.* ¶ 16, 17. She became temporarily totally disabled due to increased pain. *Id.* ¶ 17. When conservative treatment proved ineffective, Mrs.

Westenberger underwent several failed back surgeries. *Id.* ¶¶ 16–17. In December 1995, Mrs. Westenberger began working at the City Heights Town Council ("CHTC"). *Id.* ¶ 19. When her pain increased, she was referred to a pain management specialist, which included a series of back injections to alleviate back pain. *Id.* She also received a right hip injection, which caused complications necessitating a right hip replacement. *Id.* ¶ 16. As a result, Mrs. Westenberger developed a left foot deformity requiring multiple surgeries. *Id.* "These surgeries were complicated by the development of reflex sympathetic dystrophy ('RSD')." *Id.* ¶ 22. "[S]he was diagnosed with left foot neurologic problems and complex regional pain syndrome ('CRPS'). *Id.* ¶ 16. Mrs. Westenberger's worker's compensation case determined that her "right hip replacement, left foot deformity, left foot neurological problems, and CRPS were all causally related to her industrial injury suffered while working [for Plaintiff]." *Id.* Thus, Plaintiff was responsible for paying for Mrs. Westenberger's treatment for these conditions. *Id.*

During the worker's compensation proceeding, Plaintiff sought a right of contribution against CHTC and its insurer for costs associated with Mrs. Westenberger's right hip problems and right hip replacement. *Id.* ¶ 34. Ultimately, 50% of Mrs. Westenberger's right hip problems were apportioned to the 1993 back injury, and 50% were apportioned to her full-time work at CHTC. *Id.* ¶ 35. However, CHTC "is a non-profit community advocacy group with no assets and it had no worker's compensation insurance" during the time Mrs. Westenberger was working full-time. *Id.* ¶ 37. Thus, Plaintiff, with Defendants' concurrence, abandoned the contribution claim. *Id.* As a result, Defendants purportedly knew that Plaintiff faced "near certain joint and several liability" for the costs of Mrs. Westenberger's past and future treatment that would likely exceed $1 million. *Id.* ¶ 31.

In 2011, Defendants authorized Plaintiff to offer a structured settlement of $1.25 million to Mrs. Westenberger. *Id.* The "Compromise and Release" would release Plaintiff from further disability payments and any obligation to pay for Mrs. Westenberger's future medical care. *Id.* Genesis advised Plaintiff that it would initially

fund all components of the settlement, but that Genesis would reimburse Plaintiff for "each such settlement payment after [Plaintiff] submitted a request for reimbursement to Genesis." *Id.* ¶ 80. Mrs. Westenberger rejected the offer because she believed her future medical care would exceed the settlement amount. *Id.* ¶ 31.

In May 2012, Plaintiff and Mrs. Westenberger entered into a "Stipulation with Request for Award." *Id.* ¶ 25. "Defendants authorized and approved of [Plaintiff] entering into [the] 'Stipulation with Request for Award' which stated [Plaintiff] was liable for all future medical care for [Mrs. Westenberger's] 'low back, hips, left foot, psyche, and RSD . . . .'" *Id.* ¶ 31.

Plaintiff alleges that Geneis's actions were part of a scheme where Genesis would give authorization for settlement and then refuse reimbursement:

> The scheme works like this: the City was instructed to keep Genesis apprised of claims and obtain Genesis'[s] approval before settling any claim that would trigger payment of any benefits under the Policy, which it did. Genesis approves the settlement, the City settles, but then GRC/Genesis refuse to pay and raise knowingly false excuses for denying coverage. To escape liability, GRC says it never approved the settlement, and Genesis says it never had authority to approve the settlement and owes no duty of care to the City. With respect to the Westenberger claim, Genesis approved the City's settlement and promised the City it would be reimbursed for its settlement payments to Westenberger. However, GRC/Genesis have refused to reimburse the City. Genesis states it did not have authority to approve the settlement. GRC seeks to pretend it is a separate entity from Genesis that did not know what Genesis knew and did not authorize or ratify the things that Genesis did. GRC claims it was not advised and did not know about the Westenberger claim or the proposed settlement, although Genesis was fully informed of all material facts related to the Westenberger claim. GRC states the City's payments to Westenberger were unauthorized, not related to Westenberger's industrial injury and thus not covered under the Policy.

*Id.* ¶ 3; *see also* ¶¶ 62–68, 70–78, 80–82. "Prior to 2012[,] Defendants reimbursed [Plaintiff] approximately $800,000 on the Westenberger claim." *Id.* ¶ 32. However, "[s]ubsequent to the May 2012 Stipulation with Request for Award[,] Defendants made

only a single reimbursement in 2015 and in 2018 Defendants began raising numerous objections to [Plaintiff's] additional reimbursement requests." *Id.* Plaintiff alleges that the "objections are meritless and are based upon false and intentionally inaccurate grounds as well as knowing misrepresentations of California law and the terms of the Policy." *Id.*; *see also id.* ¶¶ 32–45, 68 (listing examples of Defendants' objections).

**B. The Faeldan Claim**

On September 1, 1993, Ms. Faeldan "experienced right arm and elbow pain in connection with pushing a steel cabinet file and lifting boxes of police files" while working as a data entry operator for Plaintiff's Police Department. *Id.* ¶ 46. Conservative treatment minimally improved her pain and Ms. Faeldan returned to work with limited use of her right arm. *Id.* She then developed pain in her left arm and elbow from overuse. *Id.* Ms. Faeldan "eventually had surgery on her left elbow[ and] was diagnosed with bilateral carpal tunnel syndrome[ and] myofascial pain syndrome." *Id.* She "received psychiatric treatment in connection with her injuries and inability to work." *Id.*

In June 2008, Defendants issued Plaintiff a check for $8,132.18 to reimburse Plaintiff for the amounts expended in excess of the policy's retention on the Faeldan claim. *Id.* ¶ 47. Years later, Plaintiff began making monthly life pension payments to Ms. Faeldan pursuant to an earlier stipulation and award. *Id.* ¶ 48. These payments exceeded the policy's retention on the Faeldan claim. *Id.* Plaintiff made numerous reimbursement requests to Defendants for these payments to no avail. *Id.* ¶ 49.

**C. The Gain Claim**

On May 16, 1993, Mr. Gain was working as a fire investigator for Plaintiff "when he fell through the second story of a fire damaged building, suffering significant injuries to his neck, low back, right shoulder, and right knee." *Id.* ¶ 51. As of 2008, "Defendants had reimbursed Plaintiff approximately $133,000," but determined that they overpaid Plaintiff by $58,000. *Id.* Plaintiff "issued a check to Defendants in 2009 for $58,481.75." *Id.* After 2009, Plaintiff has paid over $17,000 in life pension payments to

Mr. Gain. *Id.* ¶ 52. For several years, Plaintiff has submitted proper reimbursement requests for these life pension payments but has not received any reimbursement from Defendants. *Id.* ¶ 53. Most of these requests have been ignored, "except for once when Defendants incorrectly asserted the retention had not been exceeded." *Id.* Defendants ignored Plaintiff's response with documentation showing the exceeded retention. *Id.* In August 2017, Defendants asked for more information regarding a reimbursement request. *Id.* After receiving the information, Defendants did not reimburse Plaintiff. *Id.* Since then, all of Plaintiff's requests and e-mails to Defendants have been ignored. *Id.*

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)), *superseded by statute on other grounds*.

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

### III. DISCUSSION

#### A. Claims Based on Contract

In its previous order granting dismissal, the Court held that Plaintiff failed to allege breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief based on breach of contract because it had "not adequately pled facts to find Genesis liable under either an alter ego theory of liability or a joint venture theory." Doc. No. 16 at 10–11. Now, Genesis argues that Plaintiff alleges no contractual relationship and Plaintiff's liability theories remain insufficient. Doc. No. 18-1 at 9. Plaintiff responds that it has alleged sufficient facts under California law to support liability under both theories. Doc. No. 20 at 11–16.

#### 1. Existence of a Contract

The first element for a California breach of contract claim is "the existence of a contract." *EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124

(N.D. Cal. 2001) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (Cal. 1968)). A defendant must have been a consenting party to the contract at issue to be liable for breach of contract and breach of the implied covenant of good faith and fair dealing. *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973) (holding that the non-insurer defendants were not parties to the insurance contract and cannot be liable for breach of the implied covenant of good faith and fair dealing); *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999) (holding that "an insurance agent cannot be held liable for breach of contract or breach of the implied covenant of good faith and fair dealing because he is not a party to the insurance contract").

Here, the Court found—and the parties do not appear to now dispute—that Genesis was not a party to the contract. *See* Doc. No. 16 at 8. However, Plaintiff argues in its opposition brief that Genesis can be liable under alter ego or joint venture theories. Doc. No. 20 at 10.

### 2. Alter Ego Liability

The alter ego doctrine permits courts to disregard the distinction between a corporation and its owner and to extend liability to the owner for the acts of the corporation. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). To establish a party as the alter ego of a corporation, two requirements must be met: (1) "there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist[;]" and (2) "there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Id.*; *see also United States v. Boyce*, 38 F. Supp. 3d 1135, 1154–55 (C.D. Cal. 2014) (quoting *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010)). Conclusory allegations of alter ego status are insufficient to state a claim. *See Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983). In assessing unity of interest, courts consider several factors, including

inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002) (citations omitted). "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *Id.*

### i. Initial Considerations

As a threshold matter, Genesis argues that Plaintiff is attempting to rely upon "'reverse' alter ego liability of imposing liability on the corporation for the liability of the shareholder [which] is not permitted under California law for corporate shareholders." Doc. No. 18-1 at 9–10. California courts have held that "reverse veil piercing may be available." *Curci Investments, LLC v. Baldwin*, 14 Cal. App. 5th 214, 224 (2017) (distinguishing *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510 (2008) when the entity that *may* be pierced was an LLC *and given the specific facts* surrounding the relationship between the entity and the individual). However, this is not a reverse alter ego situation "by which the corporate veil is pierced to permit a third party creditor to reach corporate assets to satisfy claims against an *individual* shareholder." *Postal Instant Press, Inc.*, 162 Cal. App. 4th at 1513 (emphasis added); *see also Curci Investments, LLC*, 14 Cal. App. 5th at 221. There is no claim against an *individual* shareholder; rather, Plaintiff alleges that "Genesis is a wholly owned subsidiary of GRC," and seeks to pierce the corporate veils of both entities to treat them as a single entity. SAC ¶ 2; Doc No. 20 at 10.[3] The alter ego theory of liability is available to treat a

---

[3] Plaintiff requests the Court take judicial notice of GRC's answer to the SAC. Doc. No. 20 at 10 n.2; Doc. No. 20-1. Genesis does not appear to object in its reply brief. The Court **DENIES** Plaintiff's request to judicially notice GRC's answer, as it did not rely on it in ruling on the instant motion to dismiss.

corporation and its wholly owned subsidiary as a single entity to prevent abuse of the corporate form. *Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 305 (2018) (citing *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538). Therefore, alter ego liability is available to Plaintiff if it sufficiently pleads the two requirements detailed *supra*: "unity of interest and ownership" and "inequitable result."

### ii. Unity of Interest Requirement

The Court first turns to whether Plaintiff pleaded sufficient facts in its SAC to allege unity of interest and ownership.

In its previous Order, the Court found that Plaintiff sufficiently alleged the conduit factor. *See* Doc. No. 16 at 9.

For the commingled funds factor, Plaintiff alleges Genesis and GRC "refer[] to payment of policy benefits as 'our excess dollars,'" "pool their assets for the purposes of investment," "file a consolidated tax return," and "loan each other funds." SAC ¶ 3. Genesis argues that "pooled" does not equate to "commingled," "which implies a difficulty in segregating them." Doc. No. 18-1 at 10. "Courts find that a plaintiff has sufficiently demonstrated commingling where the evidence shows that the related companies transfer assets among themselves for no ascertainable reason." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015). Additionally, the commingling of funds must indicate a unity of interest and disregard for corporate separateness. *Cf. Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994) ("[A]re corporate assets commingled, does the parent company merely use the corporate shell of the subsidiary to obtain goods and services for the parent company?"). Plaintiff's allegations indicate ascertainable reasons for joining funds—investments, taxes, and loans to ensure liquidity and capitalization—that serve a common purpose for both entities. As Plaintiff presents its allegations, the pooled funds do not appear to be a means to use one of the corporate entities as a shell. Rather, the pooling appears to be a normal characteristic of corporate ownership and does not illustrate "evidence of manipulative control by the parent of its subsidiaries." *Gerritsen v. Warner Bros. Entm't*

*Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015) (quoting *Inst. of Veterinary Pathology, Inc. v. California Health Labs., Inc.*, 116 Cal. App. 3d 111, 120 (1981)).  Thus, the Court finds Plaintiff has not sufficiently alleged commingling of funds.

Plaintiff does not allege inadequate capitalization.  Rather, its allegations suggest adequate capitalization: "GRC and Genesis loan each other funds so either can reduce its level of short-term investments yet allow either to retain sufficient liquidity to pay current obligations."  SAC ¶ 3.  However, Plaintiff argues in opposition to the motion that there was a "de facto zero capitalization for insureds' claims against these entities in that insureds face an inability to recover *at all* for the wrongdoing committed by Genesis for which GRC is shielded by its separate corporate veil."  Doc. No. 20 at 12.  Plaintiff's argument both misconstrues the inadequate capitalization factor and runs counter to its own allegations.  Inadequate capitalization exists when an entity lacks the means to satisfy existing and potential creditors.  *See Jack Farenbaugh & Son v. Belmont Constr., Inc.*, 194 Cal. App. 3d 1023, 1034 (1987); *see also* B. Planning Financial-Control Structure, Cal. Prac. Guide Corps. Ch. 3-B ("[T]he corporation must be capitalized . . . in an amount that is 'adequate' to give it *independent substance* in relation to third party obligations likely to be incurred in connection with the corporation's business.").  Despite Plaintiff arguing that *its specific* claims are not capitalized, Plaintiff has not shown that Genesis cannot meet its general debt obligations as they become due.  Rather, the loans between Genesis and GRC demonstrate that it is adequately capitalized to meet its obligations.  SAC ¶ 3.  Thus, the Court finds Plaintiff has not sufficiently alleged inadequate capitalization.

As to the identical directors and officers factor, Plaintiff alleges the following: "The *majority* of Genesis'[s] officers and directors are also officers and/or directors of GRC and Genesis'[s] President/CEO reports directly to GRC's President/CEO.  Genesis'[s] current President/CEO was previously GRC's Global Claims Manager.  GRC's CEO/President prior to 2015 previously served as President/CEO of Genesis." *Id.* (emphasis added).  Genesis argues that Plaintiff's own allegations show that Genesis and

GRC do not have *identical* directors and officers.  Doc. No. 18-1 at 11.  Thus, this factor weighs in favor of Genesis given that Plaintiff does not allege identical directors and officers.  *See Virtualmagic Asia, Inc.*, 99 Cal. App. 4th at 245; *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539.

Plaintiff does not allege Genesis held itself out as liable for GRC's debts, a disregard of corporate formalities, or a lack of segregation of corporate records.  Thus, the Court finds these factors weigh toward not finding an unity of interest between Genesis and GRC.

As to the same offices and employees factor, Plaintiff alleges that "GRC and Genesis share the same headquarters in Stamford, Connecticut."  SAC ¶ 3.  Plaintiff is silent as to whether the two entities share any other offices besides their headquarters.  As to similar employees, Plaintiff alleges that "[a] number of the claims people with whom [Plaintiff] corresponded via Genesis email addresses were simultaneously employees of GRC."  *Id.*  Given that Plaintiff points to only a common out-of-state headquarters—and is silent as to other offices—and alleges vaguely that "[a] number" of employees are shared between Genesis and GRC, the Court finds this factor only weakly supports Plaintiff.

Therefore, after assessing the various factors, the Court finds Plaintiff fails to plead a unity of interest between Genesis and GRC.

### iii. Inequitable Result Requirement

The Court next turns to whether Plaintiff pleaded sufficient facts in its SAC to allege whether a fraud or other inequitable result would occur if the underlying allegations are attributed to GRC alone.

Genesis argues "[t]here is no evidence that GRC is incapable of paying any judgment against it."  Doc. No. 18-1 at 11; Doc. No. 21 at 5.  Genesis further argues, as a matter of agency, that Plaintiff "has already admitted that Genesis is GRC's claim handling representative, a fact GRC does not dispute.  If Genesis made representations in the course of its handling of [Plaintiff's] claims, GRC is legally liable for those

representations as Genesis's principal." Doc. No. 18-1 at 12 (citing *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1178 (2016)); *see also* SAC ¶ 4 ("[Plaintiff] was directed by defendants solely to Genesis with respect to claims, questions and reimbursement requests involving the policy."). Plaintiff points to a scheme to show an inequitable result. *See* SAC ¶ 3; Doc. No. 20 at 13–15. Plaintiff alleges that

> GRC has engaged in a scheme to avoid liability to the City for the claims alleged herein whereby Genesis purports to have full authority to conduct all claims handling transactions for GRC, including authorizations to settle with promises to pay, performs all functions, all communications and directions to the City, all decision making, all approvals of payments, and all denials of coverage. GRC and Genesis then seek to shield themselves from liability for bad faith breach of contract and fraud by hiding behind their separate corporate veils with each of them denying responsibility so the City cannot recover for their bad faith and fraud including punitive damages.

SAC ¶ 3. Given the alleged principal-agent relationship between GRC and Genesis, the Court finds that an inequitable result would not follow if the acts in question were attributed to only to Genesis.

Therefore, the Court finds Plaintiff fails to plead an inequitable result would occur if the underlying allegations are attributed to GRC alone.

### iv. Conclusion

Accordingly, the Court finds that Plaintiff has not alleged sufficient facts in its SAC to pierce Genesis's corporate veil to hold GRC liable for Plaintiff's underlying allegations. "Alter ego is an extreme remedy, sparingly used" and should be "approached with caution." *Davidson*, 21 Cal. App. 5th at 306 (quoting *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991)); *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539 (citing *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995). Plaintiff fails to show that this extreme remedy is warranted.

### 3. Joint Venture Liability

Courts apply the joint venture doctrine to hold each joint venture member liable in tort and contract when three elements are met: (1) "the members must have joint control over the venture (even though they may delegate it)"[;](2) the members "must share the profits of the undertaking"[;] and (3) "the members must each have an ownership interest in the enterprise." *Jeld-Wen, Inc. v. Superior Court*, 131 Cal. App. 4th 853, 872 (2005).

Plaintiff fails to allege joint control by Genesis and GRC. Rather, Plaintiff appears to allege a principal-agent relationship where Genesis acted as the main contact regarding the policy agreement between GRC and Plaintiff. *See* SAC ¶¶ 2–3; SAC Ex. 1. Plaintiff argues that the fact that a majority of the officers and directors are identical establishes joint control. Doc. No. 20 at 16; *see also* SAC ¶ 3. However, overlap in directors does not constitute facts showing that both Genesis and GRC controlled *the venture*; instead, it merely suggests a level of control *of Genesis* as a "wholly owned subsidiary of GRC." SAC ¶ 2.

To support the shared profitability element, Plaintiff alleges "Genesis instructed [Plaintiff] that any proposed settlement of a worker's compensation claim that involved 'our excess dollars' required Genesis'[s] approval." *Id.*; *see also id.* ¶ 3. As presently pleaded, vague "our excess dollars" does not allege shared profits as opposed to the workings of the principal-agent relationship. Plaintiff further alleges the entities "pool their assets for purposes of investment and they file a consolidated tax return." SAC ¶ 3. Joint investments alone do not sufficiently demonstrate that the entities share the profits given that, as presently pleaded, "neither had an interest in the payments received by the other." *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 863 (1968). Although the allegations show where the money came from, they do not allege the ultimate result of the investment—the distribution of the investment.

Accordingly, because Plaintiff fails to allege shared profits or losses or that Genesis and GRC exercise equal authority and control over the conduct of each other, Plaintiff fails to allege sufficient facts to support a joint venture theory of liability.

**4. Conclusion**

Based on the foregoing, the Court finds that Plaintiff has not pleaded sufficient facts to find Genesis liable under either an alter ego theory of liability or a joint venture theory. Plaintiff has failed to plausibly allege that Genesis could be held liable for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief based on breach of contract. The Court **GRANTS** Genesis's motion to dismiss these contract-based causes of action without prejudice and with leave to amend.

**B. Claims Sounding in Fraud**

**1. Negligent Misrepresentation**

In its previous order granting dismissal, the Court found that "Plaintiff has sufficiently alleged that Genesis owed a duty to communicate accurate information," but the Court ultimately found that "Plaintiff has not sufficiently alleged that Genesis made a misrepresentation." Doc. No. 16 at 13, 14. The Court reasoned that the "allegations do not make clear whether Genesis represented to Plaintiff that it would reimburse Plaintiff for payments made pursuant to *any* settlement offer authorized by Genesis or only for payments made pursuant to the 2011 settlement offer." *Id.* at 14. Now, Genesis argues that Plaintiff has not corrected this deficiency by removing the allegation regarding reliance on the 2011 representation and replacing it "with the contrary statement that Genesis specifically and separately 'authorized' the 2012 settlement." Doc. No. 18-1 at 14. Plaintiff responds that there is no inconsistency; instead, it argues that it alleges authorization of a second settlement in 2012 after the first 2011 settlement. *See* Doc. No. 20 at 18.

Under California law, the elements of negligent misrepresentation are

(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages.

*Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

As a preliminary matter, the Court is not persuaded by Genesis's argument that the allegations in the FAC and SAC are inconsistent. Plaintiff may allege reliance on Genesis' 2011 representation "that it would reimburse [P]laintiff for payments made pursuant to a settlement reached with Mrs. Westenberger," FAC ¶¶ 75–76, also applied to the 2012 settlement because such a promise—as the Court understands it—would not necessarily be exclusive to the 2011 settlement and thus could apply beyond it or, additionally, be a separate representation. *See* Doc No. 16 at 14 (noting the lack of clarity of the nature of the promise); Doc. No. 20 at 18; *infra* Sections III.B.1–3 (noting the *continued* lack of clarity). Moreover, the Court observes that Plaintiff's allegations in its SAC pertain to representations made over *authorization* to approve the 2012 settlement and not representations that Genesis itself would reimburse Plaintiff based on representations made in May 2011. *Compare* SAC ¶ 73 ("Genesis represented that . . . it had authority to approve [Plaintiff's] entering into the 2012 Stipulation with Request for Award."), *with* FAC ¶ 75 ("[I]n May of 2011 Genesis represented to [P]laintiff that it would reimburse [P]laintiff for payments made pursuant to a settlement reached with Mrs. Westenberger which was authorized in advanced by Genesis.").

Plaintiff alleges four representations that it claims are not true. SAC ¶¶ 73–74. Plaintiff claims

> Genesis represented that (1) it had authority to approve the City's entering into the 2012 Stipulation with Request for Award; (2) that Genesis agreed that the City was liable under Worker's Compensation Law for the future medical care for Mrs. Westenberger's hips, left foot, psyche, and RSD because these injuries/conditions could be attributed to her 1993 City injury; (3) that Genesis agreed that any payments by the City for such medical care was required by California's Worker's Compensation Laws and was therefore covered under the Policy; and (4) that Genesis agreed the contribution claim was properly discontinued.

*Id.* ¶ 73.  Genesis argues Plaintiff fails to plead with specificity under Rule 9(b).  *See* Doc. No. 18-1 at 14.  Both parties fail to cite to case law indicating that negligent misrepresentation falls under the gamut of Rule 9(b)'s heightened pleading standard.  The Court notes conflicting, nonbinding authority on whether Rule 9(b) applies to negligent misrepresentation.  *Compare Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012), *with Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 713 (E.D. Cal. 2019).  The Ninth Circuit—in unpublished cases—has applied both approaches.  *Compare Kelley v. Rambus, Inc.*, 384 F. App'x 570, 573 (9th Cir. 2010) (holding that Plaintiff's fraud and negligent misrepresentation claims failed to meet the Rule 9(b) standard), *with Miller v. Int'l Bus. Machines Corp.*, (IBM), 138 F. App'x 12, 17 (9th Cir. 2005) (reversing a district court's dismissal of a negligent misrepresentation claim because it satisfied Rule 8(a) and was "not a fraud claim.").

　　　Sitting in diversity, the Court finds that Rule 9(b) applies because negligent misrepresentation substantially "sound[s] in fraud" under California law.  *Daniels*, 246 Cal. App. 4th at 1166 (citing *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 231 (2013)).  Therefore, the Court will apply Rule 9(b) to determine procedurally whether "the *circumstances* of the fraud" are pleaded with particularity.  *Vess*, 317 F.3d at 1103; *see also* Fed. R. Civ. P. 9(b); *Kearns*, 567 F.3d at 1124.

　　　In its prior Order, the Court previously questioned "whether Genesis represented to Plaintiff that it would reimburse Plaintiff for payments made pursuant to *any* settlement offer authorized by Genesis or only for payments made pursuant to the 2011 settlement offer."  Doc. No. 16 at 14.  Now, Plaintiff argues that Genesis authorized the 2012 settlement.  Doc. No. 20 at 18.  Plaintiff alleges "Defendants authorized and approved of [Plaintiff's] entering into this 'Stipulation with Request for Award' which stated [Plaintiff] was liable for all future medical care for her 'low back, hips, left foot, psyche, and RSD . . . .'"  SAC ¶ 31; *see also id.* ¶¶ 40, 42, 44, 62.  Plaintiff claims "Genesis analyzed counsel's reports, advised [Plaintiff] it agreed with counsel, and authorized [Plaintiff] to enter into the Stipulation with Request for Award with Mrs. Westenberger,

which [Plaintiff] did on or about May 30, 2012." *Id.* ¶ 63; *see also id.* ¶ 70, 72. Plaintiff pleads that Genesis would "handle[]" the "funding/reimbursement" aspects of the 2012 settlement. *Id.* ¶ 71.

Plaintiff fails to plead with sufficient particularity whether Genesis itself would *reimburse* Plaintiff under the 2012 settlement. In answering the question presented by the Court in its order dismissing the cause of action with leave to amend, Plaintiff appears to shift the thrust of the alleged misrepresentation to Genesis's *authority* to approve settlement. *Compare* SAC ¶ 73 ("Genesis represented that . . . it had authority to approve [Plaintiff's] entering into the 2012 Stipulation with Request for Award."), *with* FAC ¶ 75 ("[I]n May of 2011 Genesis represented to [P]laintiff that it would reimburse [P]laintiff for payments made pursuant to a settlement reached with Mrs. Westenberger which was authorized in advanced by Genesis."). Although Plaintiff pleads that Genesis made the representation of such authority, Plaintiff lacks any facts surrounding the alleged authorization and related alleged misrepresentations. The Court is left without the details surrounding "'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1106). If Plaintiff provides such context in the exhibits attached to its opposition brief, the Court does not consider the exhibits because a district court's review on a Rule 12(b)(6) motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993), *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Additionally, Genesis argues in its reply brief that "even if Genesis had represented that the 2012 settlement was 'authorized,' then it would have been conveying GRC's authorization as GRC's claim representative, and not misrepresenting anything." Doc. No. 21 at 8. However, Plaintiff alleges that Genesis negligently misrepresented its settlement approval authority, and the Court has already noted that an agent owes a duty of care to third parties in the business context. *See* Doc. No. 16 at 12 (referring to *Bock v. Hansen*, 225 Cal. App. 4th 215, 230 (2014) and *Friedman v. Merck & Co.*, 107 Cal. App.

4th 454, 481 (2003)).  Thus, any principal-agent relationship between Genesis and GRC does not necessarily foreclose Genesis's liability for negligent misrepresentation.

Accordingly, the Court **GRANTS** Genesis's motion to dismiss Plaintiff's negligent misrepresentation cause of action without prejudice and with leave to amend.

### 2. Concealment

In its previous order granting dismissal, the Court found that "Plaintiff's claim for fraudulent concealment is deficient" because Plaintiff "fail[ed] to plead . . . with the specificity required by Rule 9(b)."  Doc. No. 16 at 14, 15.  Now, Genesis argues the SAC's "facts are insufficient to establish a duty to disclose"; thus, Plaintiff lacked a reasonable basis to rely on any silence by Genesis.  Doc. No. 18-1 at 16; *see also* Doc. No. 21 at 9.  Genesis also notes that Plaintiff fails to allege reliance on Genesis's silence and damages.  Doc. No.18-1 at 17, 20; *see also* Doc. No. 21 at 10.  Plaintiff disputes Genesis's argument.  Specifically, it responds that Genesis had a duty to disclose and that it "justifiably relied on Genesis's approval of the settlement and acquiescence in the discontinuance of the contribution claim because [Plaintiff] had no way of knowing the concealed facts" and "it was justifiable to rely on Genesis's acquiescence in the decision to discontinue the potential contribution claim against Westenberger's other employer." Doc. No. 20 at 24.

> The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (quoting *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 606 (2014)).  A claim for concealment must be pleaded with specificity under Rule 9(b).  *See Kearns*, 567 F.3d

at 1126–27. A plaintiff alleging concealment must plead enough facts "demonstrating that the defendant was under a legal duty to disclose those facts." *Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 831 (2015) (citing *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 845 (2007), *as modified* (Dec. 26, 2007).

To meet the first element (concealment), Plaintiff alleges that

Genesis intentionally concealed from the City the following: (1) that it did not have authority to approve the City's entering into the 2012 Stipulation with Request for Award; (2) that Genesis believed the City was not liable under Workers Compensation law for the future medical care for Mrs. Westenberger's hips, left foot, psyche, and RSD because these injuries/conditions could not be attributed to her 1993 City injury; (3) that Genesis believed any payments by the City for such medical care were not required by California's Worker's Compensation Laws and were therefore not covered under the Policy; and (4) that Genesis believed the contribution claim was meritorious and had value.

SAC ¶ 65. As with the negligent misrepresentation cause of action, Plaintiff fails to provide the requisite specificity. Despite concealment resting partly on omission, Plaintiff must still plead with particularity. *See Kearns*, 567 F.3d at 1126. To plead concealment with particularity, Plaintiff must describe not just the content of the omission but also "where the omitted information should or could have been revealed . . . [and] provide representations that plaintiff relied." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (quoting *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS FEMX, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012)). Although Plaintiff's SAC details the content of the omission, it lacks the surrounding context. For example, Plaintiff fails to provide the Court with the individual(s) at Genesis who provided the authority (the "who"), the details of what the representation of authority consisted (the "what"), when the authority was provided (the "when"), and the

documents stating that it had authority and where the omitted information should or could have been disclosed (the "where").

As to the second element (duty), Plaintiff alleges "Genesis had a duty to disclose the above facts to [Plaintiff] because, as alleged above, Genesis and [Plaintiff] had a long-term transactional relationship whereby Genesis handled every aspect of [Plaintiff's] claims for coverage in excess of its retention." SAC ¶ 66. It further avers that the relationship imported "a duty not to make representations to [Plaintiff] and conceal facts that materially qualify the facts or are likely to mislead [Plaintiff]" and a duty to disclose facts that Plaintiff "did not know and could not reasonably discover." *Id.* California courts have held the following:

> There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*Los Angeles Mem'l Coliseum Com.*, 233 Cal. App. 4th at 831 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). Each of the nonfiduciary circumstances "presupposes the existence of some other *relationship* between the plaintiff and defendant in which a duty to disclose can arise." *LiMandri*, 52 Cal. App. 4th at 336–37 (emphasis added). Regardless of Plaintiff asserting an insurer-insured relationship where Genesis acted as an agent, this relationship is merely a condition precedent. Plaintiff must still plead facts indicating one of the circumstances provided *supra*. Given the Court's analysis with the first element and the parallels in the facts needed to support this second element, the Court finds Plaintiff has not pleaded sufficient facts under Rule 9(b) to show whether Genesis had a duty to disclose. Even under the "special and heightened duties" of the insurer-insured relationship and associated agents, *Bock*, 225 Cal. App. 4th

at 229 (quoting *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1151 (2001)), Genesis fails to provide the surrounding context of the concealed information.

Accordingly, the Court **GRANTS** Genesis's motion to dismiss Plaintiff's concealment cause of action without prejudice and with leave to amend.

### 3. False Promise

Plaintiff's SAC adds a false promise cause of action. SAC ¶¶ 79–82. Namely, Plaintiff alleges Genesis falsely promised "[Plaintiff] would be promptly reimbursed for each such settlement payment after [Plaintiff] submitted a request for reimbursement to Genesis. . . . in connection with settlement of the Westenberger claim." *Id.* ¶ 80; *see also Id.* ¶ 3. As with the concealment claim, Genesis argues that Plaintiff fails to allege justifiable reliance and damages. Doc. No. 18-1 at 20. Plaintiff responds that it properly alleged a cause of action for false promise. Doc. No. 20 at 25–27.

Under California law, the elements of false promise are as follows: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676).

> To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing.

*Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991) (citing *Hills Trans. Co. v. Southwest Forest Industries, Inc.*, 266 Cal. App. 2d 702, 708 (1966); *Regus v. Schartkoff*, 156 Cal. App. 2d 382, 389 (1957)). A claim for false promise must be pleaded with specificity under Rule 9(b). *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 939 (N.D. Cal. 2008)

Plaintiff's false promise allegations lack the specificity required under Rule 9(b). Although formally designated as an additional cause of action, it contains allegations from the FAC. *See, e.g.*, FAC ¶ 75. In its previous Order, the Court cautioned Plaintiff that its allegations did "not make clear whether Genesis represented to Plaintiff that it would reimburse Plaintiff for payments made pursuant to *any* settlement offer authorized by Genesis or only for payments made pursuant to the 2011 settlement offer." Doc. No. 16 at 14. Plaintiff has failed to provide the requisite clarity.[4] Relatedly, Plaintiff does not allege the entire "'who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1106). As Genesis highlights, Plaintiff does not detail who at Genesis made the representation, when the representation was made, where the representation was made, or how it was made. *See* Doc. No. 18-1 at 21. The Court is only left with the promise itself (the "what"); however, the "what" itself lacks specificity as to whether the promise pertained to *any* settlement offer or only to the 2011 settlement offer. *See* Doc. No. 16 at 14.

Accordingly, the Court **GRANTS** Genesis's motion to dismiss Plaintiff's false promise cause of action without prejudice and with leave to amend.

/ / /

/ / /

/ / /

---

[4] Plaintiff argues the following in its opposition brief:

> Genesis misrepresents the allegations as to the false promise at page 20 where it says the only misrepresentation alleged as a 'false promise' is Genesis's prior promise to reimburse Escondido for the C&R settlement that was rejected by Westenberger. That is simply false, and the court must look at the actual allegations, which clearly state Genesis promised to reimburse the City for the 2012 settlement.

Doc. No. 20 at 26 (citing SAC ¶¶ 79–82). Despite its argument, Plaintiff has not pleaded as such in its SAC. Plaintiff's allegations remain unclear. Although Plaintiff alleges it "relied on this promise in entering into the May 2012 Stipulation with Request Award," SAC ¶ 81, Plaintiff fails to plead to what settlement(s) the promise applied.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Genesis's motion. Although Plaintiff has failed to adequately plead its claims against Genesis, it is not clear that it would be unable to do so if given leave to amend. Accordingly, dismissal is without prejudice and with leave to amend one final time. *See Knappenberger*, 566 F.3d at 942. Plaintiff must file a third amended complaint, if any, on or before **January 10, 2020**.

**IT IS SO ORDERED**.

Dated: December 18, 2019

Hon. Michael M. Anello
United States District Judge

19cv868-MMA (BGS)